# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARCUS LEWIS JAMISON,

Defendant-Appellant.

UNPUBLISHED
July 18, 2017

No. 331836
Wayne Circuit Court
LC No. 15-006430-01-FH

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of first-degree home invasion, MCL 750.110a(2), and assault by strangulation, MCL 750.84(1)(b). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 10 to 20 years' imprisonment for home invasion and 6 to 10 years' imprisonment for assault by strangulation. We affirm.

Defendant argues that trial counsel was ineffective for eliciting prejudicial testimony on cross-examination. We disagree.

In order to preserve a claim of ineffective assistance of counsel, a defendant is required to "move the trial court for a new trial or a *Ginther*[1] hearing." See *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015). The record is plain that defendant never moved for a new trial or for a *Ginther* hearing, so this issue is unpreserved.

"Appellate review of an unpreserved argument of ineffective assistance of counsel, like this one, is limited to mistakes apparent on the record." *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016). "The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016) (quotation marks and citation omitted).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"Criminal defendants have a right to effective assistance of counsel under the United States and Michigan Constitutions." *Id*. at 189-190, citing US Const, Am VI, and Const 1963, art 1, § 20. "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Id*. at 190. The United States Supreme Court has held that "in order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Jackson*, 313 Mich App at 431, quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jackson*, 313 Mich App at 431 (quotation marks and citations omitted). This Court does not "second-guess counsel's trial strategy or assess [trial counsel's] competence with the benefit of hindsight." *Schrauben*, 314 Mich App at 191.

Defendant argues that defense counsel was ineffective solely for failing to properly cross-examine the prosecution's witnesses. Specifically, defendant claims defense counsel "elicited highly-prejudicial testimony" by questioning Cheryl Cushingberry and Clarence Rondeau about complaining witness Carina Cushingberry's character for honesty and nonviolence. Regarding this matter, defense counsel questioned Rondeau in the following manner:

> *Q*. Have you ever known [Carina] to be a dishonest person?
>
> *A*. No, not to my knowledge.
>
>      \*   \*   \*
>
> *Q*. Now you, Mr. Rondeau, you've testified about this. You said that, you visit your sister everyday [sic]. Would you say that you're pretty close with her?
>
> *A*. Yes.
>
> *Q*. Okay, would you say—are you able to tell the didn't [sic] between when she's telling the truth and when she's telling a lie?
>
> *A*. I mean, she, she is pretty truthful and honest with me. You know, I have five sisters. I mean they're all pretty truthful to me.

Similarly, defense counsel questioned Cheryl on the same topic:

> *Q*. You've known your daughter all her life, correct?
>
> *A*. Yes.

*Q.* Okay, would you say that she's generally a truthful person?

*A.* She, she's, she's Carina. Yeah, she's a truthful person.

*Q.* When you say that, when you say she's Carina—

*A.* I raised her to be truthful, yes. Let me put it that way.

*Q.* Okay, so she's—when you say she's Carina I guess I mean the jury and I, we don't know. Like what does that mean?

*A.* Okay, yeah she, I said yes, she's a truthful person.

*Q.* Okay, so have you ever known her to be dishonest?

* * *

*Q.* Okay, so have you ever known her to lie on [sic] somebody?

*A.* She's lied.

*Q.* Okay. With, with your knowledge of her lying on [sic] somebody do you, do you think it's possible that she could be lying on [sic] my client?

*A.* No.

*Q.* Okay.

*A.* I actually saw her after the incident and no, she wasn't lying.

Defense counsel also asked the witnesses if Carina was a violent person and they answered in the negative.

Defendant contends that by inquiring about Carina's tendencies to be honest and nonviolent, defense counsel bolstered Carina's credibility. However, this Court has held that "how to question witnesses [is] presumed to be [a] matter[] of trial strategy." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). Further, "[t]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

Measured by the applicable standards, defense counsel's line of questioning was not objectively unreasonable. Defense counsel had reason to inquire with regard to Carina's credibility; if defense counsel could get either of Carina's own family members to admit she was not an honest or nonviolent person, this would her make her recounting of the altercation less

-3-

credible and thereby cast doubt on defendant's guilt.[2]  On the other hand, the chance that Carina's brother and mother—close relatives—would state that she was an honest and nonviolent person would likely do very little to hurt defendant's case.  Questioning Rondeau and Cheryl in the manner above was part of defense counsel's specific trial strategy, and, as stated above, this Court does not assume the role of judging trial counsel's manners and methods of trying the case at hand.  *Id*.  Further, it is of note that defense counsel actually elicited an answer from Cheryl that spoke to the possibility of Carina's penchant for lying when Cheryl admitted that Carina had lied in the past.  Defense counsel committed no apparent error outside the bounds of effective assistance of counsel; put another way, this strategy did not demonstrate that counsel's representation fell below an objective standard of reasonableness.  *Vaughn*, 491 Mich at 669.

At any rate, even if defense counsel had refrained from questioning the prosecution's witnesses about these topics, defendant cannot demonstrate that such absence of questioning would have changed the outcome of the case.  See *Putman*, 309 Mich App at 248.  Indeed, the prosecution presented substantial evidence.  The testimony of Officer Robert Rowe, Rondeau, and Cheryl all corroborated Carina's testimony that defendant was in Carina's house on Marlowe and assaulted her that early morning.  Rondeau testified that he observed defendant at the house after the incident and saw Carina distraught and bruised.  He testified that defendant was acting "fed up" and that, at one point, he "started breaking stuff" and "ma[king] threats."  Cheryl testified that she heard defendant's voice over the phone and heard Carina say "why did you hit me[?]" and then heard her say, "he's choking me."  Officer Rowe, the responding officer at the scene, testified to the red marks on Carina's neck and her hoarse, raspy voice immediately after the altercation.  Detroit Police 911 operator Shawntee Jeffries verified that a total of four 911 calls were placed from Carina's home on the morning in question regarding defendant's presence and his assaultive behavior.  In light of the evidence presented, the evidence about which defendant complains was not outcome-determinative.  Rondeau and Cheryl corroborated Carina's testimony even aside from any testimony about her character.

Affirmed.

/s/ Michael F. Gadola
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[2] Defense counsel presented, outside the presence of the jury, a police report from a different case and asserted that it showed dishonesty on the part of Carina.  Counsel stated that she was not intending to introduce the police report into evidence but implied that she was going to try to elicit other evidence of Carina's dishonesty.